FILED
2014 Apr-30  PM 03:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN  DIVISION

| | | |
|---|---|---|
| **NELL C. DYSART**, | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | |
| | ] | **CV-13-BE-2092-S** |
| **TRUSTMARK NATIONAL BANK, a** | ] | |
| **corporation; DAVID B. ANDERSON;** | ] | |
| **DEANNA L. WEIDNER; ANDERSON &** | ] | |
| **WEIDNER, et. al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION

This foreclosure matter is before the court on Trustmark National Bank's "Motion to Dismiss Amended Complaint" (doc. 20) and the Anderson Weidner Defendants' "Motion to Dismiss Amended Complaint" (doc. 23).  The Plaintiff filed a unified response to both motions (doc. 26), and the Defendants filed separate replies (docs. 32 & 34); this matter has received thorough briefing.  For the reasons stated in this Memorandum Opinion, the court will GRANT IN PART and DENY IN PART Trustmark's motion to dismiss, and GRANT the Anderson Weidner Defendants' motion in its entirety.

## I.  PROCEDURAL HISTORY

This case is the fourth lawsuit that the Plaintiff, Nell C. Dysart, has filed *pro se* arising out of the foreclosure and sale of property she formerly owned.  According to Trustmark, she voluntarily dismissed the first action brought in state court alleging wrongful foreclosure.  She also acknowledges filing two federal actions *pro se.*  Judge Johnson dismissed without prejudice

1

the first federal action for failure to state a claim upon which relief may be granted.   (doc. 10);
*see Dysart v. BankTrust*, No. 10-3521 (N.D. Ala. filed Dec. 20, 2010).   That Complaint asserted
claims against both Defendants[1] in this lawsuit, and other individuals, alleging RICO violations;
breach of a mortgage contract; slander of title; wrongful foreclosure on October 15, 2007; abuse
of process; violation of the Fair Debt Collection Practices Act; and fraud/suppression/deceit.  *See
Dysart v. BankTrust, et. al,* 10-CV-03521, doc. 1.

　　Five months after the dismissal of her first federal lawsuit, Dysart filed another federal
case, 11-CV-1917-LSC, against both Defendants in this lawsuit and other individuals, asserting
fraud,  RICO claims, breach of a mortgage contract, trespass, and intentional infliction of
emotional distress, all related to the foreclosure of her home on October 15, 2007.  Judge
Coogler dismissed the RICO claims without prejudice for failure to state a claim and declined to
exercise jurisdiction over the state law claims that remained.  *See Dysart v. BankTrust, et. al,*
CV-11-1917, docs. 69 & 70.  Dysart appealed to the Eleventh Circuit Court of Appeals, which
confirmed the district court's dismissal.  *Id.,* doc. 73.

　　In addition to the other lawsuits, Dysart also filed for Chapter 13 bankruptcy, case
number 04-9416-TBB.  Trustmark (then People's Bank and Trust Company) was the plaintiff in
an adversary proceeding, case number 07-0040-TBB, related to that bankruptcy case and
addressing tax sales of Dysart's residence, in which Dysart, the Jefferson County Tax Collector,
and tax sale purchasers were also parties.

　　Dysart originally filed the instant action in the Circuit Court of Jefferson County,

---

[1] One Defendant was "The People's Bank & Trust Company of Selma, Alabama" which
became BankTrust and then Trustmark as a result of a series of mergers.

Alabama, again complaining that both Defendants committed misdeeds relating to the foreclosure of her home on October 15, 2007.  (Doc. 1-1).  Defendant Trustmark removed the case to this court on November 15, 2013 based on diversity jurisdiction.  The Defendants filed the first set of motions to dismiss (docs. 5 & 8), and the day before those motions were to be under submssion, Dysart filed a motion for leave to amend the complaint.  (Doc. 14).  Dysart eventually amended the complaint on January 14, 2014 (doc. 18), with the court's permission, but in granting permission, the court noted the timing of the motion to amend and advised Dysart that she could not file any further amendments until the court resolved the issue of the sufficiency of the complaint as amended (doc. 16).  The Defendants subsequently filed the motions to dismiss currently before the court. (Docs. 20 & 23). At Trustmark's request (doc. 25), the court stayed the Rule 26 meeting of the parties until after a ruling on those motions. (Docket Entry Order dated February 4, 2014).  On February 14, 2014, a month after the first amendment and before the ruling on the motions to dismiss, Dysart filed a second request to amend the complaint (doc. 27), which the court denied (doc. 33), referring to its previous Order on the last motion for leave to amend.

## II.  FACTS

### A.  The Counts in the Amended Complaint

The Amended Complaint contains five Counts: Count I asserting Breach of Contract; Count II asserting Breach of Agreed Order; Count III asserting Trespass; Count IV asserting Deed Forgery; and Count V asserting Wantonness.  All of  the Counts purport to incorporate by reference generally all of the previous paragraphs, including the section marked "Factual Allegations," paragraphs 14 - 39.

**B.  The Exclusion of the Motion to Stay as Amended**

As a prelude to stating the facts considered at the motion to dismiss stage, the court notes that Defendant Trustmark asserts that "[t]he [c]ourt may consider the Motion for Determination that Automatic Stay Does Not Apply, or in the Alternative to Terminate Automatic Stay and the Amended Motion to Terminate Automatic Stay without converting Trustmark's motion to dismiss to a motion for summary judgment because Dysart references Trustmark's motion to terminate automatic stay in her []Complaint."  (Trustmark's Br. doc. 8, at 3 n. 3).  Trustmark is referring to the motion to stay as amended filed in the previous bankruptcy case, 04-9416-TBB.

Dysart does indeed reference the motion to stay as amended in her Amended Complaint, stating in paragraph 24 as part of the chronological narrative that "Dysart filed for protection under bankruptcy laws in 2004, and Trustmark requested the Bankruptcy Court to lift or terminate the automatic stay so that Defendant could foreclose against Dysart's property."  (P.'s Amend. Compl. Doc. 18, at 6, ¶ 24).  She does not quote from the motion to stay as amended, or attach it to the Complaint, and she makes no claims that would eventually require as proof the introduction of that document.

Trustmark, on the other hand, quotes from the motion to stay as amended in its brief and uses its content to support its motion to dismiss, arguing that the content of the motion to stay as amended constitutes proper notice of the foreclosure as required by the mortgage document. Further, Trustmark makes statements in its brief—unsubstantiated in the Amended Complaint—about how and when the motion to stay as amended was served on Dysart. Accordingly, before setting out the facts at this stage, the court must first determine whether Trustmark is right that the court can consider the content of the motion to stay as amended even

4

though that content is not contained within or attached to the Amended Complaint.

The Eleventh Circuit Court of Appeals has explained that "[o]rdinarily, we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss.  This court recognizes an exception, however, in cases in which a plaintiff refers to a document in its complaint, the document is *central to its claim*, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assurance, Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1284 (11th Cir. 2007) (internal citations omitted) (emphasis added).  Here, Dysart refers to the motion to stay as amended in her Amended Complaint, and Trustmark attaches that document to its motion to dismiss, apparently assuming that the Amended Complaint's reference is enough to bring the document into the Amended Complaint's purview.  That assumption, however, ignores the exception's other requirements: undisputed contents and centrality to a plaintiff's claims.

In arguing that the exception applies, Trustmark does not explain why the amended motion is central to Dysart's claim.  Perhaps it assumes that because the document is central to its own motion to dismiss and its defense to wrongful foreclosure, then the document must meet the centrality requirement.  But centrality to plaintiff's claims and centrality to a defense to those claims are not the same thing.

In considering the centrality question in the *Stephens* case, the Eleventh Circuit focused on what was central to the *plaintiff's* presentation of its claim, not what the defendant might need to respond or what the court might ultimately need to resolve the claim.  The Court of Appeals noted that the First Circuit's standard in such circumstances was whether the "[p]laintiffs unquestionably would have had to offer a copy of the article in order to prove their case" and

stated that, under that standard, the document would be central because the plaintiff would ultimately have to offer a copy of the document to prevail. *Stephens,* 500 F.3d at 1285 (quoting *Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1015 (1st Cir. 1988)). Further, another consideration was whether the plaintiff would suffer harm because of the lack of notice that the court would consider the document in ruling on the motion to dismiss. *Id.*

With this guidance in mind, this court finds that the contents of the motion to stay as amended are not central to Dysart's claim. In her Amended Complaint, she refers to the document as part of the narrative leading up to the foreclosure but not because she would need to offer a copy of the document to prevail on her claims and not because the contents of the document are otherwise central to her claims. In fact, she disputes the truth of the statements made in that document Trustmark proffers even if she does not dispute that the document was filed and contains those statements.

Accordingly, the court will not consider the contents of the motion to stay as amended as part of the facts at this motion to dismiss stage. Rather, the court will simply acknowledge what the Amended Complaint acknowledged: the fact that Trustmark asked that the stay be lifted so that the foreclosure could proceed.

## C.  The Facts

According to the "Factual Allegations" in the Amended Complaint, Dysart and Trustmark entered into a promissory note secured by a mortgage on Dysart's personal residence on Manchester Road in Vestavia Hills. The mortgage and note attached to the Amended Complaint indicate that both documents were dated August 30, 2002. The Mortgage does not purport to be under seal and does not contain the abbreviation "L.S." In contrast, the Note's signature line

6

contains the language "WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED,"

and Nell C. Dysart's signature is below with the date.

Paragraph 11 of the Note provides as follows:

> This Note is a uniform instrument with limited variations in some jurisdictions.  In
> addition to the protections given to the Note Holder under this Note, A Mortgage, Deed
> of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note,
> protects the Note Holder from possible losses which might result if I do not keep the
> promises which I make in this Note.  That Security Instrument describes how and under
> what conditions I may be required to make immediate payment in full of all amounts I
> owe under this Note.
> ***
> If Lender exercises the option to require immediate payment in full, Lender shall give
> Borrower notice of acceleration.  The notice shall provide a period of not less than 30
> days from the date the notice is given in accordance with Section 15 within which
> Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to
> pay these sums prior to the expiration of this period, Lender may invoke any remedies
> permitted by this Security Instrument without further notice or demand on Borrower.

(Amend. Compl. Doc. 18-19, at 61).

In 2004, Dysart filed for Chapter 13 bankruptcy protection, resulting in an automatic stay

of all proceedings regarding her property.  Dysart continued to make payments on the Note.

However, she did not pay property taxes on the mortgaged property, and that failure resulted in

two tax sales eventually voided by the Bankruptcy Court.  According to the Bankruptcy Court's

Order,  attached to the Amended Complaint, she also failed to pay insurance on the mortgaged

property.

Presumably because of the failure to pay insurance and taxes on the property, Trustmark

took the position that Dysart had defaulted on her mortgage and accelerated all sums due under

the mortgage.  Trustmark filed a motion requesting that the Bankruptcy Court lift the stay so that

it could foreclose on Dysart's property. Dysart did not oppose the request.

On September 4, 2007, the Bankruptcy Court entered an "Order Granting Relief from Automatic Stay," referencing Trustmark's motion, and terminating the automatic stay.  The Order stated in relevant part:

> This Court has considered the schedules and proof of claim that establish an undisputed secured debt due [Trustmark], the failure of the Debtor to pay for insurance and ad valorem taxes related to the property and the lack of any opposition to the Motion; and, this Court is of the opinion that this Order should be entered for cause under 11 USC § 362(d)(1).
>
> Accordingly, it is hereby ORDERED ... the automatic stay in this Bankruptcy Case shall be and hereby is terminated with respect to the secured claim of [Trustmark] and [Trustmark] is hereby authorized to foreclose its mortgage against the Debtor's residence.

(Amend. Compl., Doc. 18, at 47).

On that same day, September 4, 2007, the Bankruptcy Court entered an "Agreed Order" in Adversary Proceeding 07-040-TBB upon stipulation of the parties—People's Bank [Trustmark]; Plymouth Park Tax Services, LLC; Hearthwood '88, LLC; J.T. Smallwood, in his capacity as Tax Collector of Jefferson County, AL; and Nell Dysart—which addressed two tax sales on Dysart's residence.  The Bankruptcy Court ordered as follows:

> 1.  The May 25, 2004 tax sale [to Plymouth] and the May 23, 2006 tax sale [to Hearthwood] are null and void and title to the Residence is vested in Nell Dysart.
> 2.  By November 15, 2007, the Tax Collector shall return to Plymouth and Heartwood (collectively referred to as the "Purchasers") all ad valorem taxes Purchasers have paid for the Residence with interest on the taxes and excess bid amounts no later than November 15, 2007. . . .[stating amounts due and the payment process]
> 3.  By November 15, 2007, the Jefferson County Treasurer shall return to Heartwood the Heartwood Excess Bid from the Treasurer's Redemption Account.
> 4.  Plymouth shall return all non-excess bid funds totaling $6,161.50 received from Dysart or the Chapter 13 Trustee on Dysart's behalf to the Chapter 13 Trustee within twelve days of the entry of this Order, and said funds shall be paid to the Jefferson County Tax Collector for payment of taxes due on the Residence.
> 5.  Interest and penalties shall not accrue upon the taxes due until November 15,

2007.

6.  Plymouth and Heartwood are dismissed from the Adversary Proceeding with
prejudice.

7.  This Order may be recorded in the Jefferson County Probate Office.

(Amend. Compl, doc. 18, at 51-52).  Dysart reads this Order as stating that her taxes were to be

calculated as of November 15, 2007, and that no penalties or interest would accrue against Dysart

until November 15, 2007; she understood that she could wait until she received the updated

calculation of her taxes on November 15, 2007 and then pay them, and that no foreclosure would

occur before November 15, 2007.

On October 15, 2007, Trustmark foreclosed on Dysart's property.   Star Properties

purchased her home at the foreclosure.

According to the Amended Complaint, on or around October 15, 2007, David B.

Anderson and Deanna L. Weidner created a false deed and committed forgery when they

prepared a false foreclosure deed on Dysart's Manchester Road residence with intent to defraud

because they falsely recited that the foreclosure was in compliance with the power of sale

mortgage clause, and they knew that it was not in fact compliant because of improper notice and

the lack of opportunity to pay taxes.

Dysart filed the instant action in state court on October 11, 2013, and Trustmark removed

it to federal court on November 15, 2013.

### III.  LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint.   The

motion to dismiss in the instant case attacks the sufficiency of the Second Amended Complaint

filed by a *pro se* Plaintiff.  Although the court is required to show leniency to a *pro se* plaintiff's

9

pleadings, her complaint is still "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome,* 863 F.2d 835, 837 (11th Cir. 1989). *Pro se* complaints must "comply with the procedural rules that govern pleadings." *Beckwith v. Bellsouth Telecomms. Inc.*, 146 Fed. Appx. 368, 371 (11th Cir. 2005).

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)). A plaintiff must provide the grounds of her entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47). It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570). To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted

10

unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court identified "two working principles" for the district court to use in applying the facial plausibility standard. The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts. That task is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

## IV.  DISCUSSION

### A.  Fictitious Parties

No motion before the court specifically requests the dismissal of remaining fictitious parties, but the court *sua sponte* addresses this issue. Although this case was originally filed in state court where fictitious parties are permitted, it was removed to this federal court, and fictitious party practice is generally not permitted in federal court. *New v. Sports & Recreation,*

11

*Inc.*, 114 F.3d 1092, 1094 n. 1 (11th Cir. 1997).

In the instant case, Dysart includes in the style of the Amended Complaint the following description:  "Unknown Persons, A, B, C, Whose identity is unknown but will [sic] substituted by amendment when ascertained." Further, in the section marked "Parties," Dysart states generally in paragraph 13 "Unknown persons are fictitious Defendants, either natural or corporate who are responsible for or conducted wrongful acts in the complaint and whose identity will be substituted by amendment when ascertained."  (Amend. Compl. Doc. 18, at 3 ¶ 13).  Dysart asserts no specific facts relating to the fictitious Defendants and asserts no claims against the fictitious Defendants except to the extent that her claims refer generally to all "Defendants," and thus, would include the fictitious Defendants.   Under these circumstances, the court FINDS that all fictitious party Defendants in this case are due to be DISMISSED WITH PREJUDICE.

### B.  Res Judicata

In her Amended Complaint, Dysart incorporates by reference an order from her Chapter 13 bankruptcy case, 04-09416, and attaches that order to her pleading.  Trustmark asserts that this order represents an adjudication on the merits of the contract claim.  The Order specifically notes that "People's Bank" [now Trustmark] has requested the court's permission to foreclose on Dysart's property; and that the court has considered the "undisputed secured debt due People's Bank, the failure of the Debtor to pay for insurance and ad valorem taxes related to the property and the lack of any opposition to the Motion." After considering those matters, the court ordered that "People's Bank [Trustmark] is hereby authorized to foreclose its mortgage against the Debtor's residence."  (Amend. Compl. Doc. 18, at 47).  Dysart asserts that the breach of contract

claim has never been adjudicated on the merits.

The Eleventh Circuit Court of Appeals has explained that, in diversity cases such as this one, the court applies the law of the state in which it sits to determine whether doctrine of *res judicata* applies. *Wesch v. Folsom,* 6 F.3d 1465, 1471 (11th Cir. 1993). Because this court sits in Alabama, the court turns to Alabama law, which requires the following elements to apply a *res judicata* bar:

> (1) a prior judgment on the merits; (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions. If those four elements are present, then any claim that was, or that could have been, adjudicated in the prior action is barred from further litigation.

*Chapman Nursing Home, Inc. v. McDonald,* 985 So. 2d 914, 919 (Ala. 2007) (quoting *Equity Res. Mgmt. Inc. v. Vinson,* 723 So. 2d 634, 636 (Ala. 1998) (internal citations omitted)).

In the instant case, the court must address the elements of *res judicata* based on the limited information stated in or attached to the Amended Complaint, which is all that is before the court at this juncture. That means the court may consider the Bankruptcy Court's *order* on the motion to stay as amended but not the content of that *motion* to stay, which is not before the court. The court notes that while Dysart has asked for this court to take judicial notice of some court filings, she has not requested that the court take judicial notice of that motion, and while Trustmark does request the court to consider that motion, it does so under an incorporation by reference argument - not a request for judicial notice. Accordingly, the court will not consider the contents of that motion to stay as amended in addressing the *res judicata* issue.

The Amended Complaint and the attached Order on the motion to stay provide some of the *res judicata* elements listed above. For example, the Bankruptcy Court was one of competent

jurisdiction and the bankruptcy proceeding involved both Dysart and People's Bank, which

became Trustmark.  However, the court cannot say at this stage based on the limited information

properly before it that the Bankruptcy Court's judgment met all of the required elements.  The

Bankruptcy court's order finds that Dysart had not paid property taxes and insurance on the

mortgaged property and that People's Bank/Trustmark was authorized to foreclose on the

property.  That finding is pre-foreclosure—entered over a month beforehand—and is very

different from a finding that the subsequent foreclosure was properly effected and did not breach

the terms of the mortgage contract.  The court understands Trustmark's desire to be dismissed

from this case at the earliest possible opportunity.  However, the contortions that Trustmark asks

this court to make to consider facts not part of the *pro se* Amended Complaint are not

appropriate; under these circumstances, this *res judicata* issue would be best determined on

summary judgment when the court has full access to the facts.  Accordingly, the court FINDS

that Trustmark has not established, at this early stage, the applicability of the *res judicata*

doctrine to bar the breach of contract claims.

### C.  Statute of Limitations

Trustmark asserts that many of Dysart's claims are barred by the statute of limitations.

Dismissal on statute of limitations grounds under Rule 12(b)(6) "is appropriate only if it is

'apparent from the face of the complaint' that the claim is time-barred."  *La Grasta v. First*

*Union Sec., Inc.,* 358 F.3d 840, 845-46 (11th Cir. 2004) (quoting *Omar ex. rel. Cannon v.*

*Lindsey,* 334 F.3d 1246, 1251 (11th Cir. 2003)).  A statute of limitations bar is "'an affirmative

defense, and [a] plaintiff[] [is] not required to negate an affirmative defense in [her] complaint.'"

*Id.* at 845 (quoting *Treganza v. Great Am. Commc'ns Co.,* 12 F.3d 717, 718 (7th Cir. 1993)).

14

1.  Count I's Claim for Breach of Contract

As to Count I's claim for breach of contract, Dysart asserts that the ten-year statute of limitations set forth in § 6-2-33 of the Code of Alabama applies because the Note and Mortgage represent one unified contract under seal.   She claims that the breach of the contract occurred when Trustmark foreclosed on her property on October 15, 2007, having failed to give notice of acceleration as set forth in the paragraph 22 of the Mortgage.

Trustmark asserts that the six-year statute of limitations applies set forth in § 6-2-34, which applies to contracts in writing not under seal.  Another potentially applicable six-year statute of limitations is set forth in § 7-3-118(a), which applies to negotiable instruments and which no party cites.  Trustmark reasons that the motion to stay, with its request to proceed with foreclosure, notified Dysart that Trustmark was accelerating the sums due on the mortgage, and thus, any breach of the contractual notice due *before* acceleration would necessarily have occurred *before* the filing of the motion actively  pursuing acceleration and foreclosure. Trustmark thus asserts that the statute began to run at the filing or Dysart's receipt of the motion to stay or the amended motion in early 2007.

The court notes that the date of the receipt of the motion and amended motion are not stated in the Amended Complaint or its attachments.  The date of the resulting Bankruptcy Court Order terminating the stay is stated in the Amended Complaint as September 4, 2007.  Because that motion was filed on or before September 4, 2007 and provided notice of impending foreclosure proceedings, Trustmark argues that the six-year statute ran before Dysart filed the instant suit on October 11, 2013.

Under Alabama law, the elements of a breach-of-contract claim are "(1) a valid contract

15

binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's

nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.,* 29 So. 3d 872, 880

(Ala. 2009) (citations omitted).

Based on the face of the Amended Complaint, the court knows the date of the foreclosure

and knows that Dysart filed suit within six years of that date, the shortest proffered limitations

period as to breach of contract claim[2].  Trustmark has not provided the court with controlling

case law—or pointed this court to sufficient facts in the Amended Complaint or properly

incorporated in it—supporting the accrual of the action before the foreclosure date, and thus,

Trustmark has not met its burden of establishing a breach of contract as a matter of law.

Accordingly, the court DENIES Trustmark's motion to dismiss based on a statute of limitations

bar to the breach of contract claim in Count II.  This denial is without prejudice to Trustmark's

raising the statute of limitations issue again at the summary judgment stage with supporting case

law and evidence.

### 2.  Count III's Claim for Trespass

Count III of the Amended Complaint asserts that Defendants committed trespass based on

the October 15, 2007 foreclosure sale when "Defendants physically took possession of Dysart's

---

[2] Ala. Code § 6-2-2(e) (1975) provides that Chapter 2 on Limitations of Actions, including § § 6-2-33 and 6-2-34, "shall not apply to negotiable instruments which are governed by Sections 7-3-118 and 7-4-111."  The document that Dysart points to as being under seal is the promissory note.  Thus, *if* the promissory note is a negotiable instrument, § 6-2-2(e) mandates that the six-year statute of limitations of § 7-3-118 must apply, regardless of whether the note is a contract under seal.  *See Foster v. Hacienda Nirvana, Inc.,* 32 So. 3d 1256, 1259 (Ala. 2009) (finding the trial court properly determined that the promissory note was a negotiable instrument and that the six-year statute of limitations in § 7-3-118 applied regardless of whether the note was under seal).  This court does not specifically find whether the note is a negotiable instrument but merely notes that *if* it is a negotiable instrument and the shorter statute of limitations period applies, Trustmark has not met its burden of proof at this early stage.

home, posted a notice of eviction on Dysart's front door – for neighbors to take notice of while simultaneously passing fraudulent title of ownership to a third party." (Amend. Compl. Doc. 18, at 14 ¶ 52).  Count III also specifies that the trespass claim is subject to a six-year statute of limitations and characterizes Defendants' conduct as "fraudulent."  *Id.* at ¶ 53 and Count III's caption.

Alabama law has been in flux regarding which statute of limitations applies to trespass cases.  The Alabama Supreme Court has recently explained that the proper distinction is not whether the trespass involves direct versus indirect force, but rather, whether the trespass was intentional (six- year statute) or not (two-year statute, encompassing wanton conduct).  *See Ex parte Capstone Bldg. Corp.,*  96 So. 3d 77, 86-88 (Ala. 2012); *see also Bus. Realty Inv. Co. v. Jefferson Cnty., Ala.,* 2013 WL 3381374 (N.D. Ala. July 8, 2013) (explaining that after *Ex parte Capstone,* "[f]or the six year period of limitations to apply, the conduct must be intentional [and] wanton trespass claims fall under the two-year statute of limitations").

No allegations in the text of Count III use the word "intent" or a form of that word. Dysart does use the word "fraudulently" but, as § 6-5-101 states, legal fraud encompasses misrepresentation made "recklessly without knowledge, and acted on by the opposite party, or ... by mistake and innocently and acted on by the opposite party . . . ." Ala. Code § 6-5-101 (1975).

In Count III, Dysart does incorporate by reference all 49 previous paragraphs in the Amended Complaint, including paragraph 38, which alleges generally that "[t]he conduct of the Defendants was oppressive, negligent, wanton, reckless, intentional, and/or malicious."  (Doc. 18, at 9, ¶ 38).  The Eleventh Circuit Court of Appeals "'has been roundly, repeatedly, and consistently condemning [shotgun pleadings] for years.'"  *See, e.g., Paylor v. Hartford Fire Ins.*

*Co.,* ___ F3d ___, 2014 WL 1363544, at *7-8 (11th Cir. 2014) (quoting *Davis v. Coca-Cola*

*Bottling Co.,* 516 F.3d 955, 979 (11th Cir. 2008)).

In the instant case, the court cannot ascertain from paragraph 38 what conduct is allegedly

intentional, what conduct is allegedly wanton, what conduct is allegedly reckless, what conduct is

allegedly negligent, and which Defendant allegedly committed the conduct falling into each those

categories. Accordingly, the incorporation by reference of this paragraph into Count III does not

somehow transform the trespass allegations into intentional conduct falling within the six-year

statute. Based on the allegations of Count III and the confusing and unfortunate incorporation by

reference of all previous paragraphs, the court cannot determine which Defendants allegedly

committed trespass and what level of intent allegedly accompanied the trespass. Therefore, this

count does not state a plausible claim under the standard for pleadings set out in *Bell Atlantic*

*Corp v. Twombly*, 550 U.S. 544 (2007). The court GRANTS the motions to dismiss as to the

trespass count, and will DISMISS that count WITHOUT PREJUDICE.

### 3. Count V's Claim for Wantonness

In Count V, Dysart asserts that Defendants committed some wanton act. Because Count

V incorporates by reference all 65 preceding paragraphs, determining what act or actions this

*pro se* Plaintiff is claiming to be wanton is a challenge. In paragraph 70, Dysart refers to the

October 15, 2007 foreclosure on her residence and in paragraph 72, she refers to Defendants

paying taxes on her property in December 27, 2007. In this Count, she also refers to two other

dates, but those dates are dates on which the Bankruptcy Court ruled (September 4, 2007) and on

which, by order of the Bankruptcy Court, the tax accounting was due (November 15, 2007).

Assuming *arguendo* that Dysart has stated a claim for wantonness—and the court does

not find that she has—any such claim would be barred by the applicable statute of limitations because, based on the allegations of the Amended Complaint, it would have accrued in 2007.

The statute of limitations for the torts alleging wanton conduct is two years in Alabama, as clarified in the Supreme Court of Alabama's 2012 decision of *Ex parte Capstone,* 96 So. 3d at 86-88. Prior to that ruling, confusion reigned in Alabama for a period of time about whether a two-year or a six-year statute applied to wantonness. In *Ex parte Capstone,* the Supreme Court resolved the issue by choosing the two-year statute, but allowed litigants whose causes of actions for wanton actions accrued on or before June 3, 2011 to have two years from that date —i.e., June 3, 2013—to bring an action "unless and to the extent that the time for filing their action under the six-year limitations period [ ] would expire sooner." *Id.* at 91.

Applying that limitation to the instant case, Dysart's action accrued sometime in 2007, and thus, based on *Ex parte Capstone* ruling, the latest she could bring the action would be June 3, 2013. She brought this action in October of 2013, and thus, the statute of limitations for her wantonness claim had already expired as of that date. To the extent, if any, that Dysart has stated a plausible claim for wantonness, that claim is barred by the statute of limitations. The court FINDS that the motions to dismiss are due to be GRANTED WITH PREJUDICE as to the wantonness claim in Count V.

**D.  Merits**

1.  Count I: Breach of Agreed Order

       *a.  Trustmark*

Trustmark's argument regarding the merits of Count I is focused on notice and relies in part on evidence that is not part of the Amended Complaint. Accordingly, the court FINDS that

the motion is due to be DENIED as to that claim against Trustmark.

### b. *Anderson Weidner Defendants*

The Amended Complaint incorporates by reference and attaches the note and mortgage. Dysart asserts that these documents together form a unified contract that the Defendants breached.  However, the attached note and mortgage reflect that the Anderson Weidner Defendants were not parties to the note or the mortgage.  Therefore, the Amended Complaint does not state a plausible claim for breach of that "unified" contract against the Anderson Weidner Defendants, and Anderson Weidner Defendants' motion is due to be GRANTED WITH PREJUDICE as to the claim asserted against them in Count I.

### 2. Count II: Breach of Agreed Order

### a. *Trustmark*

Dysart claims that the Agreed Order, an agreement to which the parties stipulated and which the Bankruptcy Court approved, required Defendants to wait until after the November 15, 2007 deadline for tax accounting before effecting foreclosure on Dysart's property and that the October 2007 foreclosure represented a breach of the agreement.  She bases that argument on the language of the Agreed Order, which she incorporates by reference to the Amended Complaint, attaching it to that pleading, and does not base her argument on any collateral agreement or discussion that occurred surrounding the Agreed Order.

Trustmark argues, on the other hand, that the two September 4, 2007 Orders of the Bankruptcy Court—the Order Granting Relief from Automatic Stay (doc. 18, at 47) and Agreed Order (doc. 18, at 49)—authorized Trustmark to proceed with foreclosure and did not require delay of the foreclosure until November 15, 2007 or the completion of the tax accounting with

the purchasers from the tax sales of Dysart's property.

The fact section of this opinion quotes from both orders.  As the quoted language reflects, the Order Granting Relief from Automatic Stay "authorized [Trustmark] to foreclose its mortgage against the Debtor's residence" without requiring Trustmark to delay.  (Doc. 18, at 47). Further, the Agreed Order voided two tax sales of Dysart's property and gave a November 15, 2007 deadline for the Jefferson County Treasurer and Tax Collector to calculate and refund to tax sale purchasers (not Trustmark or Dysart) the amount due them as a result of the voided tax sales. The Agreed Order also stated that "[i]nterest and penalties shall not accrue upon the taxes due until November 15, 2007." (Doc. 18, at 51, ¶ 5).  Although Dysart may have mis-read the orders as putting on hold until November 15, 2007 the foreclosure, her misunderstanding of the Agreed Order does not change what the Agreed Order says.  Neither of these Bankruptcy Court Orders specifically states or implies that the foreclosure on her property must or would be delayed until November 15, 2007 or afterwards. Accordingly, Dysart asserts no plausible claim that the foreclosure breached the Agreed Order.  Trustmark's motion to dismiss is due to be GRANTED WITH PREJUDICE as to the breach of contract claim in Count II.

### b. *Anderson Weidner Defendants*

As to the claim in Count II asserted against the Anderson Weidner Defendants, their motion is also due to be GRANTED WITH PREJUDICE for the same reason discussed above regarding Trustmark.  Another basis for this ruling as to the Anderson Weidner Defendants is that the Amended Complaint and the Agreed Order incorporated into it by reference do not reflect that the Anderson Weidner Defendants were parties to the agreement memorialized in the Agreed Order.  Thus, Count II does not state a plausible claim against the Anderson Weidner

21

Defendants.

       3.  Count IV's Claim for "Deed Forgery"

In Count IV, Dysart asserts that the foreclosure deed recorded in the Probate Court of

Jefferson County on October 15, 2007 was false because it recited that the foreclosure was in

compliance with the power of sale mortgage clauses and because it violated the Bankruptcy

Court's Agreed Order.  Dysart further asserts that the foreclosure deed was submitted for

recording with the intent to defraud and otherwise violated § 13A-9-3(a)(1) of the Alabama

Code.  Dysart clearly intends to assert these claims against Defendants David Anderson and

Deanna L. Weidner, as she attributes specific acts and intentions to them.  Although Dysart does

not state any specific acts that Trustmark committed, she uses the term "Defendants," which may

or may not include Trustmark.

As this court reads this Count, Dysart is attempting to assert a violation of a criminal

statute, § 13A-9-3(a)(1) in this civil case.  She repeatedly refers to the criminal statute, uses the

term "crime," and provides citations and quotations from criminal cases.  However, the Alabama

statute upon which she relies appears to be designed for the protection of the public, and no

language in it indicates that it creates a private right of action.  Dysart's reliance on the criminal

statute to create a private right of action is misplaced.  *See Linda R.S. v. Richard C.,* 410 U.S.

614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or

nonprosecution of another."); *see also Love v. Delta Air Lines,* 310 F.3d 1347, 1352-53 (11th

Cir. 2002) (stating "[c]riminal statutes generally do not provide a private cause of action");

*Gibson v. Gains,* 2006 WL 858336 (11th Cir. 2006) (finding that "to the extent that [the plaintiff]

raises criminal allegations against the defendants, [he] lacks standing to raise such claims and the

22

district court properly dismissed them.").  Accordingly, the motions to dismiss are due to be GRANTED WITH PREJUDICE as to this claim against all Defendants.

<h3 style="text-align:center">V.  CONCLUSION</h3>

In sum, for the reasons stated above, the court FINDS as follows:

• The fictitious parties are due to be DISMISSED WITH PREJUDICE, *sua sponte.*

• As to the claims in Count I, the Anderson Weidner Defendants' motion is due to be GRANTED WITH PREJUDICE, and Trustmark's motion is due to be DENIED.

• As to the claims in Count II, the motions are due to be GRANTED WITH PREJUDICE as to all Defendants.

• As to the claims in Count III, the motions are due to be GRANTED WITHOUT PREJUDICE as to all Defendants.

• As to the claims in Count IV, the motions are due to be GRANTED WITH PREJUDICE as to all Defendants.

• As to the claims in Count V, the motions are due to be GRANTED WITH PREJUDICE as to all Defendants.

This case will proceed with the breach of contract claim asserted in Count I against Trustmark.

Dated this 30th day of April, 2014.

_Karon O. Bowdre_
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE