FILED
2020 Aug-19  PM 12:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **NELL DYSART,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CIVIL ACTION NO.** |
| | ] | **2:13-CV-02092-KOB** |
| **TRUSTMARK NATIONAL BANK,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION

This foreclosure case comes before the court on Defendant Trustmark National Bank's motion for partial summary judgment on Plaintiff Nell Dysart's breach of contract claim, the only remaining claim in her amended complaint. (Doc. 114).  The claim involves breach of contract for Trustmark's alleged failure to give proper notice before foreclosing on Ms. Dysart's home.  Trustmark does not contest the merits of Ms. Dysart's claim at this juncture, but, rather, provides various challenges to her ability to recover damages.  Trustmark argues that Ms. Dysart cannot show actual damages, cannot recover damages for emotional anguish, and cannot recover prejudgment interest.

After considering the submissions of the parties and reading the evidence and drawing inferences from the record in the light most favorable to Ms. Dysart, the court finds that genuine issues of material fact exist that preclude the entry of

partial summary judgment in Trustmark's favor.  First, Ms. Dysart can survive summary judgment on the issue of whether she can show actual damages because an issue remains regarding whether Ms. Dysart had actual knowledge of the impending foreclosure of her home or of what she could do to prevent foreclosure. Ms. Dysart's potential lack of knowledge means that she could possibly show at trial that Trustmark's actions damaged her because she lost her house and, because of lack of notice from Trustmark, was unable to take action to prevent the loss. Additionally, a genuine issue of material fact exists regarding whether Ms. Dysart can show a sufficiently egregious breach to recover emotional anguish damages. Finally, Trustmark cannot show as a matter of law that Ms. Dysart cannot recover prejudgment interest.  Because the court finds that genuine issues of material fact remain regarding the question of whether Ms. Dysart can recover damages, the court will DENY Trustmark's motion for summary judgment.

## I.     FACTUAL BACKGROUND

This case arises from a dispute regarding a mortgage that Trustmark held secured by Ms. Dysart's home and Trustmark's subsequent foreclosure sale of the home.  Ms. Dysart borrowed money from Trustmark secured by a mortgage on her home.  The mortgage, which was based on a form agreement, obligated Ms. Dysart to make monthly payments to Trustmark, pay taxes attributable to the property, and keep the property insured, among other things.  The agreement stated that, if

Dysart defaulted on any of these obligations, Trustmark could accelerate the loan, foreclose on the property, and sell the property in a foreclosure sale.

The mortgage dictated the procedures that Trustmark had to follow in the event of default. The mortgage stated that all notices must be provided in writing and stated that, if Trustmark accelerated the loan, Ms. Dysart could cure the default and return to the original terms of the mortgage. Trustmark would reinstate the loan if Ms. Dysart paid all sums that were then currently due under the mortgage, cured any default of other covenants or agreements, paid Trustmark's expenses in enforcing the mortgage including its reasonable attorney's fees, and took any other action that Trustmark reasonably required.

Of relevance here, the mortgage required specific and detailed notice in the event of default and acceleration. Paragraph 22 of the mortgage provided:

> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). **The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.** If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument

without further demand and may invoke the power of sale and any
other remedies permitted by Applicable Law.  Lender shall be entitled
to collect all expenses incurred in pursuing the remedies provided in
this Section 22, including, but not limited to, reasonable attorneys'
fees and costs of title evidence.

(Doc. 1-1 at 35) (emphasis added).

The issue between the parties in this case first arose when, in 2004, Ms.

Dysart received a letter from Trustmark's attorney advising her that the note

secured by the mortgage on her home was in default.  Ms. Dysart attempted to

make a late mortgage payment, which Trustmark did not accept because it did not

cover all payments due with accrued interest and fees.

Also in 2004, Ms. Dysart filed for Chapter 7 bankruptcy.  Throughout her

bankruptcy proceedings Ms. Dysart was represented by attorney Eddie Sexton.

Trustmark filed a motion to terminate the automatic stay in the bankruptcy

case and permit it to foreclose on Ms. Dysart's home.   As grounds, Trustmark

stated that Md. Dysart had defaulted on her debt, and that no payment had been

made on the mortgage since January 2004 and that, as of a March 2004 title search,

the 2003 property taxes had not been paid.  The motion also referenced a March

letter giving Dysart 30 days' notice that Trustmark would proceed with foreclosure

unless payment was made, and stated that the thirty days had expired without

payment.

However, Trustmark did not foreclose.  Instead, Ms. Dysart cured her

arrearage and reinstated the mortgage.  Ms. Dysart received a discharge from

Chapter 7 bankruptcy in August of 2004.

Shortly thereafter, Ms. Dysart filed for Chapter 13 Bankruptcy.  In 2006,

while Ms. Dysart was in her Chapter 13 bankruptcy proceedings, Trustmark

notified Ms. Dysart that she was in default on her mortgage for failing to maintain

insurance and for owing taxes.  In early 2007, Trustmark filed a motion in the

bankruptcy court to terminate the automatic stay because of Ms. Dysart's default.

In its filing, Trustmark stated that, on October 27, 2006, Trustmark gave notice to

Ms. Dysart that she was in default and demanded payment, that 60 days had

expired since such notice, and that the debt was subject to acceleration because Ms.

Dysart did not cure the default within that 60-day period.  The motion gave the

current amount of indebtedness, explained that interest continued to accrue,

provided the premium cost for the lender-placed insurance coverage, and included

contact information for Trustmark's attorney.

Ms. Dysart denies receiving the October 27, 2006 letter, but admits

receiving the motions filed in the bankruptcy action.  She took no action to cure

her arrearage upon receiving the motions.  The record contains no clear indication

regarding whether Trustmark actually communicated to Ms. Dysart that she had a

right to reinstatement after the loan was accelerated or a right to bring an action to

assert the non-existence of a default or any other borrower's defense to

acceleration and sale.  Ms. Dysart also states that Trustmark did not provide her with an exact amount or date for curing her arrearage.

In July 2007, Trustmark corresponded with Ms. Dysart's lawyer Mr. Sexton about Ms. Dysart's default and arrearage.  In August 2007, Mr. Sexton corresponded with Trustmark and said that Ms. Dysart was either unable or unwilling to bring her mortgage up to date to avoid foreclosure.  Ms. Dysart states that she did not receive the correspondence and does not know if Mr. Sexton notified her of the requirements to avoid foreclosure.

The bankruptcy court granted Trustmark relief from the automatic stay in September 2007.  Ms. Dysart received the order lifting the stay and understood that Trustmark intended to foreclose.  On September 11, 2007, Mr. Sexton sent a letter to Trustmark's attorneys asking if Trustmark would consider Ms. Dysart paying an extra $300 per month to prevent foreclosure.  Trustmark said no.  Mr. Sexton then communicated that Ms. Dysart could not do more.  Trustmark's attorneys gave Mr. Sexton extensive information about the impending foreclosure and Ms. Dysart's rights, but Ms. Dysart denies receiving the substance of those discussions.  Ms. Dysart also asserts that she did not tell Mr. Sexton that she could not pay more than $300 a month or otherwise raise funds to avoid foreclosure.  The record indicates that Ms. Dysart's son possibly could have provided her funds to avoid foreclosure, though Ms. Dysart did not ask him to do so at the time.

Ms. Dysart did not attempt payment to bring her loan current.  Ms. Dysart acknowledges that Trustmark advertised her home for foreclosure sale in the *Alabama Messenger* on September 22 and 29, and October 6, 2007.  Following these advertisements, Trustmark foreclosed on the property and sold the home on October 15, 2007.  As of October 15, 2007, Trustmark's appraiser valued the home at between $310,000 and $315,000.  Ms. Dysart's real estate agent valued the home at between $349,900 and $369,000.

## II.    PROCEDURAL HISTORY

Ms. Dysart originally filed this suit in 2013 in state court.  Defendant Trustmark then removed it to this federal court based on diversity jurisdiction. This suit is the fourth action that Dysart has filed about alleged misdeeds relating to the foreclosure and sale of the property that she formerly owned.  All of the previous actions have ended in dismissal.

The original complaint in the instant case asserted claims against other Defendants in addition to Trustmark, but the court has since dismissed those claims and has dismissed all Defendants except Trustmark.   (Doc. 38; doc. 46).  After multiple rounds of amendment to Ms. Dysart's complaint, Trustmark filed multiple motions to dismiss, (doc. 20; doc. 41), and the court dismissed all claims against Trustmark except the breach of contract for lack of proper notice claim asserted in Count I, (doc. 38; doc. 46).

Trustmark then filed a motion for summary judgment and Ms. Dysart filed her own motion for summary judgment.  In its motion for summary judgment, Trustmark argued that it had not breached the operative contract because it had satisfied its notice obligations before accelerating the loan (1) by substantially complying with those obligations, or (2) because Ms. Dysart was actually aware of the non-disclosed rights from prior dealings between the parties.  This court granted Trustmark's summary judgment motion.  (Doc. 70).  Although no clear evidence on the record showed that Trustmark had informed Ms. Dysart of her rights to reinstatement or to bring a separate action to assert the non-existence of a default, the court found that Trustmark had fulfilled its notice obligations because Ms. Dysart had actual knowledge of these rights.

The Eleventh Circuit reversed this court's grant of summary judgment in May of 2018.  The Eleventh Circuit held that Trustmark had failed to give Ms. Dysart notification as required in ¶ 22 of the mortgage, and Ms. Dysart's constructive knowledge of the elements of ¶ 22 did not suffice to cure the breach. The Eleventh Circuit noted that "although Trustmark breached the terms of the mortgage by failing to give Dysart proper notice before accelerating the loan, if Dysart had independent knowledge of the information that Trustmark was required to disclose, she may have suffered no actual damages. But this would not defeat Dysart's claim because even without actual damages Alabama law permits the

8

recovery of nominal damages in breach of contract actions."  *Dysart v. Trustmark Nat'l Bank*, 729 F. App'x 722, 728 (11th Cir. 2018).

## III.    Standard of Review

Summary judgment allows a trial court to decide cases that present no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment, it must determine two things: whether any genuine issues of material fact exist, and, if not, whether the moving party is entitled to judgment as a matter of law.  *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party

"to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). But, inferences can create genuine issues of material fact. *Carlson v. FedEx Ground Package Systems, Inc.*, 787 F.3d 1313, 1318 (11th Cir. 2015).

In response, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial.*'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added).

The court must "view the evidence presented through the prism of the substantive evidentiary burden" to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254. The court must refrain from weighing the evidence and making credibility determinations because these decisions belong to a jury. *See id.* at 255.

Further, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

## IV.    ANALYSIS

In its motion for partial summary judgment, Trustmark makes multiple arguments for why Ms. Dysart cannot collect damages on her claims. The court will address the arguments in turn.

### a.  *Can Ms. Dysart show actual damages?*

Trustmark argues that Ms. Dysart cannot show actual damages because she had knowledge of the items that Trustmark was supposed to notify her about according to ¶ 22 of the mortgage. (Doc. 115). Trustmark relies heavily on dicta from the Eleventh Circuit's opinion in this case, in which the Court indicated that Ms. Dysart might not be able to show actual damages if she had "independent knowledge of the information that Trustmark was required to disclose." (Doc. 115 at 16); *Dysart*, 729 F.3d at 727.

Trustmark argues that Ms. Dysart cannot show that any failure to provide specific notice by Trustmark caused Ms. Dysart any damages because she had

11

actual knowledge of the information covered in ¶ 22.  Trustmark asserts that this court already determined in its previous opinion that Ms. Dysart had notice of the relevant provisions.  Further, Trustmark asserts that Ms. Dysart cannot show damages because, even with the knowledge she possessed, she did not reach out to Trustmark to try to remedy her default and did not make a credible effort to sell or redeem the property.

Ms. Dysart responds that her knowledge is irrelevant because notice is a condition precedent to foreclosure under ¶ 22 of the operative mortgage agreement. (Doc. 123).  She argues that, therefore, actual knowledge does not limit her recovery to nominal damages.  Ms. Dysart goes on to argue that, even if it did, Trustmark cannot succeed on its motion for summary judgment because Ms. Dysart did *not* have independent knowledge of all of the information required by ¶ 22 of the mortgage.  Ms. Dysart asserts that she knew of the default and the fact that acceleration and foreclosure would eventually follow, but she did not know the amount to cure the default, the exact date by which she had to cure the default, that she could reinstate the loan after acceleration, or that she could bring a court action.

In reply, Trustmark simply repeats that Ms. Dysart cannot show damages where she had knowledge of the all of the information that the mortgage required Trustmark to provide.  (Doc. 125).

To succeed on a breach of contract claim, a plaintiff must show "(1) the existence of a valid contract binding the parties, (2) [her] own performance under the contract, (3) the defendant's nonperformance under the contract, and (4) resulting damages." *State Farm Fire & Cas. Co. v. Williams,* 926 So. 2d 1008, 1013 (Ala. 2005). In its motion for partial summary judgment, Trustmark does not contest Ms. Dysart's potential ability to show the first three elements, or even to show nominal damages that would allow her to succeed on her claim. Instead, Trustmark merely contests Ms. Dysart's ability to recover actual, compensatory damages for her breach of contract claim. The court finds that a genuine issue of material fact regarding Ms. Dysart's knowledge precludes summary judgment on the issue of whether Ms. Dysart can recover actual damages. *See* Fed. R. Civ. P. 56.

Trustmark's argument that Ms. Dysart cannot show damages hinges on its assertion that Ms. Dysart had "independent knowledge" of everything that ¶ 22 of the mortgage required Trustmark to provide to her. The mortgage provides that the notice Trustmark had to give to Ms. Dysart before it could accelerate the loan must identify: "(a) default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums ... and sale of the

Property[;]" and finally, (e) the right to reinstate after acceleration and the right to

bring a court action asserting defenses to the acceleration and sale.  (Doc. 1-1 at ¶

22).

The record in this case shows that Ms. Dysart had actual knowledge that she

was in default, that some action was needed to cure the default, and that a failure to

cure the default could result in acceleration and foreclosure.  However, Ms. Dysart

denies having knowledge of the exact amount needed to cure the default, the date

by which the default had to be cured, or the right to reinstate after acceleration or

to bring a court action.  While the record indicates that Ms. Dysart's lawyer had

notice of the right to reinstate and to bring a court action, which could potentially

be imputed to Ms. Dysart, the record does not clearly show the amount necessary

to bring the mortgage up to date or the actual date that any payment was due, much

less whether Ms. Dysart had knowledge of that information.

A genuine issue of fact exists regarding Ms. Dysart's knowledge of some of

the information that Trustmark was required to provide under ¶ 22 of the mortgage.

Further, this issue of fact qualifies as material because knowing the actual cost of

bringing the mortgage up to date and the date that payment was due might have led

to Ms. Dysart taking different steps to try to prevent foreclosure, for instance,

asking her son for the money.  Accordingly, a genuine issue of material fact exists

about Ms. Dysart's knowledge—the linchpin of Trustmark's argument—and her

ability to show damages.  Therefore, the court will deny Trustmark's motion for summary judgment on the issue of actual damages.[1]

### b. *Can Ms. Dysart collect mental anguish damages?*

Trustmark also argues that Ms. Dysart cannot collect mental anguish damages because the applicable law requires an "egregious" breach of contract, which Ms. Dysart cannot show.  (Doc. 115).  Trustmark argues that a mere failure to strictly adhere to the notice requirements in the mortgage does not rise to the level of an egregious breach.  It asserts that Ms. Dysart was not surprised by the possibility of foreclosure, so the breach was not egregious.

The court notes that Trustmark also argues that Ms. Dysart cannot recover for things like medical damages and storage costs.  However, Ms. Dysart clarifies that she is not seeking those damages; they are merely part of her request for mental anguish damages.  Accordingly, the court will not address those damages separately.

Ms. Dysart responds that she can recover mental anguish damages because the breach in this case was egregious, as it led to the loss of the home where she lived with her mother.  (Doc. 123).  She argues that the question of whether the

---

[1] As an additional note, because a genuine issue of material fact exists regarding whether Ms. Dysart had actual knowledge of the information Trustmark was required to provide—which defeats Trustmark's motion for summary judgment— the court need not address Ms. Dysart's alternative argument that, because notice is a condition precedent to foreclosure, she necessarily suffered actual damages.

breach was egregious should be decided by a jury at trial, not through summary judgment.

Trustmark replies that the mere fact that it foreclosed on a home does not render the breach in this case egregious.  (Doc. 125).  It argues that the breach does not qualify as egregious because it followed a long and drawn out foreclosure process that Ms. Dysart could have halted, which eliminated any element of surprise.

Both Trustmark and Dysart agree that no clear law governs mental anguish damages in cases like this one arising from a breach of the notice provisions of a mortgage.  Alabama law generally does not allow recovery of damages for mental anguish in actions for breach of contract, but a small exception exists where the contractual duty is so intrinsically tied to matters of feelings and solicitude that a breach will naturally result in mental anguish and suffering.  *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1359 (11th Cir. 2000).  These cases typically arise in breaches of contract involving the repair or construction of a home because homes are so important to people emotionally.  *Id.*

Generally, to recover mental anguish damages for breach of contract relating to a home, a plaintiff must show "(1) that the breach be egregious, i.e., that it result in *severe* construction defects; (2) that those defects render the home virtually uninhabitable; and (3) that the breach *necessarily or reasonably* result in mental

16

anguish or suffering." *Baldwin v. Panetta*, 4 So. 3d 555, 567–68 (Ala. Civ. App. 2008) (*citing, e.g., Liberty Homes, Inc. v. Epperson,* 581 So. 2d 449, 454 (Ala. 1991); *B&M Homes, Inc. v. Hogan,* 376 So. 2d 667 (Ala. 1979)); *see also In re Sharpe*, 425 B.R. 620 (Bankr. N.D. Ala. 2010) (adopting the same factors)). The parties both assert that this framework applies in the present case and dispute only whether the breach in this case qualifies as sufficiently "egregious" to allow recovery of mental anguish damages.

Assuming without deciding that the framework adopted by the parties applies, the court finds that a genuine issue of material fact precludes summary judgment on this issue. The court finds that the egregiousness of Trustmark's conduct presents a factual question for the jury, not a legal question for the court to decide on summary judgment.

This court is not alone in determining that egregiousness can present a question of fact that defeats summary judgment; the District Court for the Southern District of Alabama has also come to the same conclusion in a case dealing with potential foreclosure in which the plaintiff *almost* lost her home. *Webb v. Ocwen Loan Servicing, LLC*, No. CIV.A. 11-00732-KD-M, 2012 WL 5906729, at *10 (S.D. Ala. Nov. 26, 2012) (finding "a genuine dispute of material fact as to whether defendants' conduct was so egregious as to allow damages for mental anguish"). Accordingly, the court will deny summary judgment on the issue of

mental anguish damages.

     *c.  <u>Can Ms. Dysart collect prejudgment interest?</u>*

Finally, Trustmark asserts that Ms. Dysart cannot recover prejudgment interest.  (Doc. 115).  Trustmark argues that, under Alabama law, prejudgment interest is only available where the amount of damages at issue is certain. Trustmark argues that Ms. Dysart's damages do not qualify as certain because of the subjective nature of the appraisal of the value of a home.

In response, Ms. Dysart argues that Trustmark must pay prejudgment interest because the amount of damages qualifies as reasonably certain in this case. (Doc. 123).  To support her argument, Ms. Dysart relies on Alabama law indicating that damages can be reasonably certain and result in prejudgment interest where they can be ascertained with ease or through simple mathematical computation. She argues that, here, the damages can be easily calculated by subtracting the amount owed on the house from the fair market value at the time of foreclosure. She asserts that the jury can determine the actual fair market value of the house and then the computation of damages will be simple and certain.

Trustmark replies that the value of damages is not only uncertain in this case, but also cannot be easily calculated so as to make it reasonably certain.  (Doc. 125).  Trustmark argues that, therefore, Ms. Dysart cannot recover prejudgment interest.

Alabama law provides that "[a]ll contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty bear interest from the day such money, or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed." Ala. Code § 8-8-8. Under that statute, Alabama courts have determined that prejudgment interest is available in actions for breach of contract, "but only if damages were reasonably certain at the time of the breach." *Goolesby v. Koch Farms, LLC*, 955 So. 2d 422, 429 (Ala. 2006).

Damages reasonably certain at the time of the breach include damages involving a "sum *capable* of being made certain." *Braswell v. Conagra, Inc.*, 936 F.2d 1169, 1177 (11th Cir. 1991) (emphasis added). As such, the Alabama Supreme Court held that prejudgment interest was appropriate in a case involving a breach of a timber cutting contract where the plaintiff and the defendant had markedly different value assessments but a special master reached a factual conclusion regarding the volume of timber cut and then the damages assessment became a simple mathematical computation. *Miller & Co. v. McCown*, 531 So. 2d 888, 889 (Ala. 1988).

Similarly, the Eleventh Circuit, applying Alabama law, held that prejudgment interest was appropriate where parties offered different estimates of damages but the jury found the value of the damages by determining which expert

19

to heed and then applied a mathematical formula. *Braswell*, 936 F.2d at 1177. The parties in those cases put forth differing estimates about the value of the damages, but the sums were *capable* of being made certain and evidence rendered the damages certain by the end of the proceedings.

Here, the parties, like the parties in *Miller* and *Braswell*, offer differing opinions about the value of the damages. Trustmark relies on that difference—as well as the inherent subjectivity of appraisal—to argue that the damages in this case do not qualify as "reasonably certain." But, the jury in this case should be able to listen to the expert testimony and arrive at a value for Ms. Dysart's home; adhering to the arguments put forth by the parties at this stage of the proceedings, the jury should then be able to apply a simple mathematical computation subtracting the amount Ms. Dysart owed from the value of the home to determine her damages. So, the damages in this case are capable of being made certain.

Because Trustmark has not shown that the damages in this case are not capable of being made certain, as required by Alabama's prejudgment interest statute, the court will deny Trustmark's motion for summary judgment on the issue of prejudgment interest.

## V.    CONCLUSION

Trustmark has not met the necessary burden to obtain partial summary judgment against Ms. Dysart in this case. Genuine issues of material fact,

including the extent of Ms. Dysart's knowledge and the egregiousness of Trustmark's alleged breach of contract, preclude a finding that Ms. Dysart can not show actual damages or damages for mental anguish.  Additionally, Trustmark has not shown that Ms. Dysart cannot collect prejudgment interest under Alabama law. Accordingly, the court DENIES Trustmark's motion for summary judgment.

**DONE** and **ORDERED** this 19th day of August, 2020.

**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE